NO. 07-01-0382-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



JANUARY 2, 2003


______________________________



JIM STACY SMITH
,




 Appellant


v.



THE STATE OF TEXAS, 




 Appellee

_________________________________



FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;



NO. 42,808-E; HON. ABE LOPEZ, PRESIDING


_______________________________



Before QUINN and REAVIS, JJ., and BOYD, SJ. (1)

 Appellant Jim Stacy Smith appeals his conviction of the offense of criminal non-support by contending 1) the evidence is legally insufficient to sustain his conviction, and
2) the evidence is legally insufficient to support a finding against his affirmative defense. 
We affirm the judgment of the trial court. 

 


Issue One - Legal Sufficiency of the Evidence to Support the Conviction


 In his first issue, appellant challenges the legal sufficiency of the evidence to
sustain his conviction. We overrule the issue.

 The standards by which we review the legal sufficiency of the evidence are well
established, and it is unnecessary for us to reiterate them. We cite the parties to Jackson
v. Virginia, 443 U.S. 307, 309, 99 S.Ct. 2871, 61 L. Ed.2d 560 (1979) and King v. State,
29 S.W.3d 556, 562-63 (Tex. Crim. App. 2000) for explanation of the same. 

 An individual commits the offense of criminal non-support if he intentionally or
knowingly fails to provide support for his child who is younger than 18 years of age or who
is the subject of a court order requiring him to support the child. Tex. Pen. Code Ann.
§25.05(a) (Vernon Supp. 2003). The offense is committed by omission or neglect and
continues as long as the neglect continues without excuse. Belcher v. State, 962 S.W.2d
653, 656 (Tex. App.--Austin 1998, no pet.). Appellant was charged with failing to provide
support for Nathan-Ferril Smith, who was the subject of a court order, from and after
August 18, 1997. The complaint was filed on August 14, 2000. 

 With the exception of the indictment, the only evidence admitted at trial was that put
on by appellant, including his own testimony. (2) The statute provides that a conviction can
be had on the uncorroborated testimony of a party to the offense. Id. §25.05(c). Further,
a conviction may be sustained irrespective of whether the prosecution or the defense
provides the evidence of guilt. Stewart v. State, 12 S.W.3d 146, 148 (Tex. App.--Houston
[1st Dist.] 2000, no pet.). 

 Next, through the indictment at bar, the State alleged that appellant "on or about the
18th day of August, 1997 . . . did then and there intentionally and knowingly fail to provide
support for Nathan-Ferril Smith, who was then and there the subject of a court order
requiring the defendant to support said child . . . ." At bar, there appears evidence that
appellant was divorced in 1988. Via the divorce decree, he was ordered to pay child
support of $350 per month. (3) However, in 1989, he was sent to prison for ten years. While
he was in prison, one or more of his parents died in 1993 and left him an inheritance of
$25,000 cash, over 150 acres of land, and a house. Furthermore, tenants of the house
and acreage paid monthly rent of $300 and $2,000 respectively. These funds, along with 
the original $25,000, the house, and the acreage, were held for appellant in "trust." Thus,
as of August 18, 1997 (the date alleged in the indictment), appellant owned a substantial
amount of monies and assets. However, he did not pay his child support obligation until
after being released from prison in 1998, and then did so sporadically. (4) And, upon his
release from prison, appellant spent much of his money on restoring the house he
inherited, as opposed to paying child support. 

 The court, as factfinder, found that appellant had "consciously directed his
resources that he had available to him . . . to benefit himself when he should have
supported his child." Viewing the evidence in the light most favorable to the prosecution
as we must, a rational trier of fact could have found (beyond reasonable doubt) that
appellant intentionally and knowingly failed to support his child who was the subject of a
court order. Thus, the evidence was legally sufficient to support the judgment. 

 Issue Two - Insufficiency of the Evidence as to Ability to Pay

 In his second issue, appellant complains of the legal sufficiency of the evidence to
demonstrate that he had the ability to support his child. We overrule the issue.

 An affirmative defense to the prosecution of the offense of criminal non-support is
that the actor could not provide support. Tex. Pen. Code Ann. §25.05(d) (Vernon Supp.
2003). As recited above, the record contains evidence as to appellant's ability to pay
during at least part of the time for which he was charged with non-support. More
importantly, the factfinder was entitled to believe and conclude, beyond reasonable doubt,
that he had the ability to pay. 

 Accordingly, the judgment of the trial court is affirmed.


 Brian Quinn

 Justice 


Do not publish.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't
code ann. §75.002(a)(1) (Vernon 1998). 
2. The record indicates that the parties had entered into a stipulation with respect to at least some
of the facts of the case and the court accepted the stipulation, but the stipulation itself does not appear in
the record. 
3. Appellant has not contested that the amount in the court order is not the appropriate level of
support for the child. 
4. Appellant attempts to justify his failure to pay the child support obligation by alleging that he thought
his ex-wife and child had died in an auto accident. He purportedly saw a news clip on a local television
station depicting the wrecked car of his ex-wife. Yet, whether the news commentator indicated that his child
and ex-wife were killed is unknown. Whether anyone said that his child was in the car is unknown. When
this supposed accident occurred is unknown. And, whether he asked anyone (such as a family member)
about the health of his child or to investigate the incident (assuming he could not) is unknown. Given this,
the factfinder could well have discredited his excuse for foregoing payment and the care of his child. 



nt-size: 10pt">Labrador Oil Co. v. Norton Drilling Co., 1 S.W.3d 795, 803 (Tex. App.-Amarillo 1999, no
pet.). Similarly absent is any explanation as to the role, if any, the disclosures played in the
decision to supposedly terminate Bean "in retaliation for filing a worker's compensation
charge and a discrimination charge under T.C.H.R.A." Instead, we are left to speculate
about the substance of her contention. That too falls short of complying with her appellate
burden. See In re CDK, supra. So, given that she failed to abide by applicable rules of
procedure, she did not carry her burden to illustrate why no ground existed supporting the
trial court's decision.

 Furthermore, the evidence illustrates that George and Buford were directed by
Exxon personnel to evaluate Bean for purposes of clarifying the job restrictions on which
she was placed. Bean does not dispute that. Furthermore, statute provides that a person
"who receives information from confidential communications or records may not disclose
the information except to the extent that disclosure is consistent with the authorized
purposes for which the person first obtained the information." Tex. Health & Safety Code
Ann. §611.004(d) (Vernon 2003) (emphasis added). We know of and are cited to no
authority which prohibits an employer from assigning medical personnel the task of
evaluating an employee for purposes of job performance or job compatibility. And, since
George and Buford were assigned such a task by Bean's employer, §611.004(d) authorized
them to disclose the purportedly confidential information received from Bean during their
meeting to her employer, i.e. Exxon. Thus, we cannot say that the trial court erred in
granting summary judgment on the claim of improperly disclosing confidential information
in violation of §611.001 et seq. of the Texas Health and Safety Code. 

 Issue Three - Intentional Misrepresentation that Statements 


to George and Buford were Confidential


 Bean relies on Exxon's policies entitled "'Standards of Business Conduct'" for her
contention that Exxon, George and Buford had represented to her that any communications
regarding her medical condition would be kept confidential. Specifically, she relies on the
following paragraph:

 provide voluntary health promotion programs designed to enhance
employees' well being, productivity, and personal safety. These programs
should supplement, but not interfere with, the responsibility of employees for
their own health care or their relationship with personal physicians. 
Information about employees obtained through the implementation of these
programs should be considered confidential and should not be revealed to
non-medical personnel except: at the request of the employee concerned,
when required by law, when dictated by overriding public health
considerations, or when necessary to implement the guidelines of the Alcohol
and Drug Use policy.


Bean contends that George and Buford violated this policy by releasing confidential
information to non-medical personnel, e.g., other Exxon employees. We overrule the issue
for several reasons.

 First, Bean cites us to no evidence illustrating that either George or Buford drafted
the policy or disseminated it to her. If they did neither, then it cannot be said that the
purported misrepresentation contained in it was made by them. And, unless they made a
supposed misrepresentation, they cannot be charged with deceiving Bean.

 Second, the policy in question speaks of information "obtained through the
implementation of" a "voluntary health promotion program." Bean again cites us to no
evidence suggesting or from which it could be reasonably inferred that her communications
to any medical health person were part of such a health promotion program. Indeed, she
does not even attempt to explain what such a program is. Given that the restriction upon
which she relies arises only in certain situations, it was incumbent upon Bean to provide
some evidence indicating that such a situation was involved here. And, simply put, she did
not.

 Third, and regarding the contention that Buford and George committed
misrepresentation through omission, we note that Bean's appellate argument is conclusory
at best. Indeed, she cites no authority for the proposition that either doctor "owed [her] a
duty to inform her that her medical condition and confidential information was being
discussed with ExxonMobil management." Yet, since the duty to which she referred is
apparently that imposed by Exxon's "Standards of Business Conduct" (as they related to
voluntary health promotion programs), Bean again had to illustrate that her confidences
were imparted during her involvement in such a program. And, as discussed in the
preceding paragraph, she did not.

Issue Four - Retaliation complaint for filing a worker's compensation claim 


and for filing an EEOC complaint


 Bean next contends that the trial court erred in granting summary judgment on her
claim of retaliation. The grounds alleged by Exxon in support of its motion were several. 
They included, among other things, 1) Bean's inability to show a causal relationship
between her filing of a worker's compensation claim (due to job-related stress) and the
EEOC claims and her subsequent treatment and termination and 2) her inability to perform
the essential functions of her job. In granting summary judgment on the claim, the trial
court again mentioned no specific ground upon which it relied. Now, Bean argues that
there existed of record sufficient evidence to establish the requisite causal link. We
overrule the issue.

 Because the trial court specified no particular ground as the basis for granting
summary judgment on the retaliation claims, Bean was obligated to show why none of the
reasons proffered by Exxon warranted such relief. And, while she devoted a large part of
her brief to the matter of causation, she said nothing about her being able to perform the
essential elements of her job. That is, nowhere did she present argument or record citation
purporting to illustrate that she could work at any job. This may be due to the undisputed
evidence that her own doctor ultimately opined that she was "unfit for any work." Yet,
whatever the reason, it was her burden to attack the summary judgment ground in her
appellate brief, and she did not. Thus, we are unable to say that she succeeded in
disproving the validity of every ground upon which the trial court could have relied. 

Issue Five - Limitations


 In her fifth and final issue, Bean asserts that the trial court could not have granted
summary judgment on her retaliation claims on the basis of limitations. We need not
address this issue given our disposition of Issue Four. Simply put, whether limitations
barred suit matters not given that she failed to illustrate that summary judgment was
improper on each of the other grounds asserted by Exxon. 

 Having overruled each issue presented to us, we affirm the judgment of the trial
court.


 Brian Quinn

 Justice




1. The pertinent code provision states that communications between a patient and a professional, and
the records of the identity, diagnosis, evaluation, or treatment of a patient that are created or maintained by
a professional, are confidential. Tex. Health & Safety Code Ann. §611.002(a) (Vernon 2003). Furthermore,
a person aggrieved by a violation of §611.002 may redress the situation through legal action "appropriate
relief, including injunctive relief" as well as damages. Id. at §611.005(a) & (c).